*FOR PUBLICATION*

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX
APPELLATE DIVISION

| | |
|---|---|
| UNITED INDUSTRIAL WORKERS ON BEHALF OF AUDREY RIVERA, | ) ) ) ) D.C. CIV. APP. NO. 2003/127A ) Super. Ct. No. 185/2000 ) ) ) ) ) ) ) |
| Appellant, | |
| v. | |
| GOVERNMENT OF THE VIRGIN ISLANDS, BUREAU OF CORRECTIONS, | |
| Appellees. | |

On Appeal from the Superior Court of the Virgin Islands

Considered: December 19, 2008
Filed: April 28, 2009

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge, U.S. District Court of the Virgin Islands; **RAYMOND L. FINCH**, Judge of the U.S. District Court of the Virgin Islands; and **BRENDA J. HOLLAR** Judge of the Superior Court of the Virgin Islands, sitting by designation.

**Eszart A. Wynter, Esq.**
St. Croix, U.S.V.I.
    Attorney for Appellant.

**Richard S. Davis, AAG**
St. Croix, U.S.V.I.
    Attorney for Appellee.

**Per Curiam.**

# Memorandum Opinion

In this appeal, we review a Superior Court decision vacating an arbitrator's award in a wrongful discharge cause of action.

## I. FACTUAL & PROCEDURAL POSTURE

Appellant, Audrey Rivera ("Rivera") commenced employment as a corrections officer with the U.S. Virgin Islands' Bureau of Corrections ("Corrections" or "agency") on April 30, 1984. On September 3, 1998, Russell Hart a food service contractor with Corrections, reported to administrators that on September 2, 1998, he saw Rivera engaged in a deep, open-mouth kiss with an inmate named Lester Greenidge. (App. 26.) An investigation ensued by the Internal Affairs Unit of the Bureau of Correction. Rivera was subsequently charged with violation of the agency's regulation prohibiting fraternization with inmates. On October 15, 1998, Corrections held a hearing where Rivera pled not guilty to the administrative charges. On October 26, 1998, after reviewing the reports and investigative findings, Corrections issued a written decision finding Rivera guilty. The Director of Corrections dismissed Rivera from her position on November 17, 1998.

*UIW v. Government of the Virgin Islands*
D.C.Civ.App. No. 2003/0127A
Memorandum Opinion
Page 3

On November 9, 1998, the United Industrial Workers of North America-Seafarers International Union, AFL-CIO, ("Union"), on behalf of Rivera, filed a grievance. Pursuant to the Collective Bargaining Agreement between the Union and the Government, the case was submitted for arbitration.(App. 32.) Hearings occurred before the arbitrator on October 19, 1999, January 14, 2000 and February 25, 2000 to determine whether Rivera was wrongfully discharged. The arbitrator heard testimony, reviewed documentary evidence and on March, 28, 2000, issued a decision.

The arbitrator found that there was sufficient evidence to conclude that fraternization occurred. Nonetheless, the arbitrator decided that the Government's case was not clear and convincing. (App. 10.) Consequently, the arbitrator reinstated Rivera to her position. The reinstatement excluded back pay and mandated forfeiture of Rivera's seniority and benefits for the time period between her termination and her reinstatement. The arbitrator also gave the Bureau discretionary authority to reassign Rivera to duties that did not bring her in direct contact with the inmate population. (App. 11.)

The Government, seeking Rivera's termination, appealed the arbitrator's decision via writ of review to the Superior Court of the Virgin Islands. (App. 12.) In its July 30, 2003 order, the

Superior Court vacated the arbitrator's award as exceeding the scope of the arbitrator's authority and remanded the matter for further consideration. (App. 3-4.)

Relying on *State of Rhode Island v. Rhode Island Brotherhood of Correctional Officers*, the court determined that where the arbitrator found that it was more likely than not that fraternization occurred, termination was the proper penalty.[1] The court further noted that public policy required the director of a prison facility to exercise the non-delegable authority to fashion appropriate penalties for workplace violations. The court further held that the arbitrator inappropriately "substituted his personal judgment as to the reasonableness of the penalty" when he decided not to terminate Rivera, despite his finding that fraternization occurred. (App. 3.) On August 8, 2003, this timely appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The Superior Court has jurisdiction over the arbitrator's award under both Virgin Islands' law and the FAA. *Government of the V.I. v. United Indus. Workers*, 987 F. Supp. 439, 444 (D.V.I. 1997); *Corp. v. Keating*, 465 U.S. 1, 16, 79 L. Ed. 2d 1, 104 S.

---

[1] 819 A.2d 1286 (R.I. 2003).

UIW v. *Government of the Virgin Islands*
D.C.Civ.App. No. 2003/0127A
Memorandum Opinion
Page 5

Ct. 852 (1984); see, e.g., *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 130 L. Ed. 2d 753, 115 S. Ct. 834 (1995); *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 477 n.6, 103 L. Ed. 2d 488, 109 S. Ct. 1248 (1989) ("We have held that the FAA's 'substantive' provisions -- §§ 1 and 2 -- are applicable in state as well as federal court . . . .") For purposes of the FAA, the Territorial Court of the Virgin Islands is a 'state' court.[2] Cf. *Harris v. Boreham*, 3 V.I. 565, 572-73, 233 F.2d 110, 113-14 (3d Cir. 1956).

The FAA 9 U.S.C. § 10 provides that an arbitration award is subject to judicial review if:

> (1) the award was procured by corruption, fraud, or undue means;
> (2) there was evident partiality or corruption in the arbitrators, or either of them;
> (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and

---

[2] At all times relevant to the lower court's proceedings, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. See Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, where applicable, the Court employs the terms Superior Court and judge of the Superior Court.

> definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

This appeal concerns a Superior Court order concluding that an arbitrator exceeded his authority. We may therefore appropriately exercise jurisdiction over this decision. *See* 9 USC § 10; 5 V.I.C. § 1421.

## III. DISCUSSION

The arbitrator clearly found that it was more likely than not that an incident of fraternization occurred between Ms. Rivera and inmate Lester Greenidge.(App. 10.) However, the arbitrator, without citing any relevant authority, held that Corrections did not meet the clear and convincing standard for termination. (*Id.*)

The trial court cited *State of Rhode Island v. Rhode Island Brotherhood of Correctional Officers* as authority to impose a higher standard of conduct for corrections officers. 819 A.2d 1286 (R.I. 2003);(App. 2-4.) The trial court reasoned that this elevated standard supports termination for fraternization. We are of the opinion, however, that this case concerns the application of far more fundamental contract principles.

UIW v. Government of the Virgin Islands
D.C.Civ.App. No. 2003/0127A
Memorandum Opinion
Page 7

The legitimacy of a civil arbitrator's award is derived from the agreement between the parties.[3] We, thus turn to Article IX, § 8 of the Collective Bargaining Agreement between the parties, which provides in pertinent part that:

> "An arbitrator shall have jurisdiction and authority *only to interpret,* apply or determine compliance with the express provisions of this agreement *and shall not have authority* to add, detract from or alter its provisions *in any way.*"

(App. 58.)(emphasis added)

As such, the arbitrator, like all similarly situated arbitrators is confined to interpretation and application of the collective bargaining agreement and does not sit to dispense his own brand of industrial justice. *See United Steeleworkers of America v. Enterprise Wheel*, 363 U.S. 593 (1960) (citations omitted). Hence, while he may draw guidance from other sources, his award is legitimate only so long as he draws from the collective bargaining agreement. *Id.* The agreement at issue here indicates that the arbitrator's jurisdiction is limited *only* to interpretation, application and determinations of compliance

---

[3] The Appellee, and Appellant Union are parties to a collective bargaining agreement dated October 1, 1006 through September 30, 1999. (App. 32-98.) The contract was extended on a day-to-day basis on September 30, 1999 and remained in effect at all times relevant to the proceedings below. At the time this action was initiated Rivera was a member of the Union.

*UIW v. Government of the Virgin Islands*
D.C.Civ.App. No. 2003/0127A
Memorandum Opinion
Page 8

with the express provisions of the Collective Bargaining Agreement, nothing more. (App. 58.)

Article X, Section 4 of the Collective Bargaining Agreement, goes on to state that:

> The Attorney General or his designee, shall have the right to *immediately* discipline an employee, up to and *including discharge*, for the commission of one of the following offenses. . . fraternization, or engaging in sexual contact with an inmate.

(App. 61-62.) (emphasis added).[4]

The Collective Bargaining Agreement expressly identifies a spectrum of disciplinary actions as appropriate penalties for fraternization. (*Id.*) These penalties include immediate discharge. (*Id.*) It follows that once the arbitrator found that it was more likely than not that fraternization occurred, Corrections was well within the contractually acceptable range of disciplinary actions when it immediately discharge Ms. Rivera. *See id.*

The arbitrator held that the Government persuaded him that it was more likely than not that an incident of fraternization occurred. Contrarily, the arbitrator then went on to determine

---

[4] The Director of the Bureau of Corrections is the Virgin Islands Attorney General's designee to administer the Bureau of Corrections.

that Corrections did not meet a clear and convincing standard of proof to terminate Rivera.[5] Hence the arbitrator's decision was a clear departure from his limited contractual authority to *solely* interpret, apply and determine compliance with the agreement. *See, e.g., United Steele Workers of America v. Adbill Management Corp.*, 754 F.2d 138 (3d. Cir. 1985). (*See* App. 58.)

## IV. CONCLUSION

In sum, fraternization with inmates, is expressly listed in the Collective Bargaining Agreement as a type of infraction sufficiently offensive to the agency's mission to warrant immediate termination. (App. 61-62.) Neither the arbitrator, nor this court, may appropriately undermine the express provisions of the Collective Bargaining Agreement with our own judgment. *See United Steele Workers of America* 754 F.2d 138. The arbitrator determined that fraternization occurred. (App. 10.) Termination, therefore, was a contractually sound

---

[5] We recognize that generally, the arbitrator's conception of matters such as the burden of proof may not be reexamined by the courts. *Local 863 Int'l Bhd. of Teamsters v. Jersey Coast Egg Producers, Inc.*, 773 F.2d 530, 535-536 (3d Cir. 1985). However, this arbitrator erred not by imposing a particular standard of proof, but by deciding to fashion an alternate punishment in lieu of termination when the Collective Bargaining Agreement unequivocally approved termination as a penalty for fraternization. *See, e.g., United Steele Workers of America v. Adbill Management Corp.*, 754 F.2d 138 (3d. Cir. 1985).

*UIW v. Government of the Virgin Islands*
D.C.Civ.App. No. 2003/0127A
Memorandum Opinion
Page 10

disciplinary consequence to Ms. Rivera's conduct. Accordingly, we affirm the Superior Court's decision.